UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| APEX GROUP CAPITAL ADVISORS LLC f/k/a SANDSPOINT CAPITAL ADVISORS LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> RELATED FUND MANAGEMENT LLC et al., <br><br> *Defendants.* | § § § § § § § § § § § § § § § Civil Action No. 3:25-CV-1627-X |

**MEMORANDUM ORDER AND OPINION**

Before the Court is Defendants Related Fund Management LLC (Related Fund), James Kraus, Lucas Belinkie, Preston Callen, William C. Chaney, and Ryan Hope's Motion to Transfer Venue. (Doc. 17). Having considered the motion, the Court **GRANTS** the motion to transfer venue and **DISMISSES WITHOUT PREJUDICE** Defendants Related Fund, Kraus, Hope, Callen, Chaney, and Belinkie's Motions to Dismiss (Docs. 46, 48, 49. 52, 57).

## I. Background

Defendants Belinkie, Callen, Chaney, and Hope ("Former Employees") are former employees of SandsPoint Capital Advisors ("SandsPoint"). Defendant Related Fund was a longtime customer of SandsPoint. As part of that relationship, the Former Employees worked directly with Related Fund.

1

In 2022, SandsPoint was acquired by Apex Group Ltd., keeping Related Fund as a customer and continuing to employ the Former Employees.

While at Apex, the Defendant Employees each signed employment agreements that contained confidentiality agreements, non-competes, and non-solicitation clauses. Specifically, the Defendant Employees agreed (1) "not [to] divulge, furnish, or make available to any third person . . . any trade secrets or other confidential information concerning [Apex . . . or] any of [Apex]'s clients or customers"; (2) during and for twelve months after their employment with Apex, not to "perform any services for any entity that is in competition with the business of [Apex]" in the jurisdictions Apex operates in or has plans to operate in; and (3) "not [to] directly or indirectly . . . include or attempt to induce any employee" to leave Apex.[1]

Within that context, on January 29, 2024, Apex and Related Fund entered into a new Master Services Agreement (the "Agreement"). Defendant Kraus signed on Related Fund's behalf as its Chief Financial Officer and Defendant Belinkie led the negotiations on behalf of Apex. The other Former Employees were generally aware of the terms of the Agreement.

Apex proposed that Texas law apply, but Related Fund insisted on New York law. Accordingly, the choice of law and forum selection clause provided:

> This Agreement shall be construed in accordance with, and governed by the laws of the State of New York and the Parties submit to the exclusive jurisdiction of the federal and state courts situated in the State of New York, County of New York.[2]

---

[1] Doc. 6-3 § 4(a)–(c).

[2] Doc. 17, Ex. B § 30.

Similarly, the Former Employees each had employment contracts that selected New York law to govern any disputes as to those agreements. The Agreement's terms also included a confidentiality clause, which provides:

> Each Party undertakes that it shall not at any time during the validity of this Agreement, and for a period of two (2) years after termination or expiry of this Agreement or such other period as determined by Applicable Law, disclose to any person any confidential information concerning the business, affairs, clients or service providers of the other party or of any member of the group of companies to which the other Party belongs, except as permitted by clause 8.2(a).[3]

Between June and July 2024, Related Fund informed Apex that it felt Apex's team was understaffed and that its quality had declined. Then in October, the Former Employees gave notice and joined IQ-EQ, one of Apex's competitors that also serviced Related Fund. Related Fund continued to complain about Apex's services and ultimately terminated the Agreement, demanding that Apex return Related Fund's data.

Apex filed this suit in May 2025, alleging that the Related Fund had orchestrated the Former Employees' departures in a "corporate raid," stole data, and enriched itself at Apex's detriment. Apex accordingly brought various claims against Related Fund, Defendant Kraus, and the Former Employees.

Defendants now move to transfer this case to New York, as Related Fund and Apex agreed to in the Agreement's forum selection clause.

---

[3] *Id.*, Ex. B § 8.1.

## II. Analysis

Typically, a court evaluating a § 1404(a) transfer motion typically evaluates both the convenience of the parties and various public-interest considerations.[4] But "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause."[5] These clauses are "bargained for by the parties," so enforcement "protects their legitimate expectations and furthers vital interests of the justice system."[6] Accordingly, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases."[7]

Reviewing courts "may consider arguments about public-interest factors only."[8] Courts do not give weight to the plaintiff's choice of forum or arguments about the private parties' interests, as those were bargained away at the time of contract formation.[9]

Here, the Apex and Related Fund's Agreement states:

This Agreement shall be construed in accordance with, and governed by the laws of the State of New York and the Parties submit to the exclusive jurisdiction of the federal and state courts situated in the State of New York, County of New York.[10]

---

[4] *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 62 (2013).

[5] *Id.* at 63.

[6] *Id.* (cleaned up).

[7] *Id.* (cleaned up).

[8] *Id.* at 64.

[9] *Id.* at 63–64.

[10] Doc. 17-3 at 13.

4

So we have a forum-selection clause dictating all disputes between Apex and Related Fund shall be governed by New York law and within the "exclusive jurisdiction" of New York federal and state courts. And, as the Supreme Court has admonished, the Court must give "controlling weight" to the clause unless Apex shows that this is a "*most exceptional*" case.[11]

Apex raises four arguments against granting this transfer: (1) the majority of its claims are tort claims, not contract claims and so not covered by the clause; (2) the Former Employees, as non-signees, cannot claim the benefit of the clause; (3) private factors, such as convenience for witnesses, favor keeping the case in this Court; and (4) public factors do not favor transfer.

Courts do not consider private factors when an agreement contains a forum-selection clause.[12] So the Court will only consider arguments one, two, and four.

Apex first argues that the Court should not give effect to the clause because all but one of the ten claims in the case fall outside the scope of the Agreement. Apex brings one breach of contract claim against Related Fund. The remaining claims are tort claims or based in separate employment agreements between Apex and the Former Employees.

But the Fifth Circuit does not embrace a "slavish adherence to a contract/tort distinction" when a forum-selection clause is invoked.[13] Instead, courts examine the

---

[11] *Atlantic Marine*, 571 U.S. at 63 (emphasis added).

[12] *Id.*

[13] *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444 (5th Cir 2008).

forum-selection clause's language "with a common-sense view of the causes of action" to determine whether the language covers the torts.[14]

The Fifth Circuit has found language such as "[a]ny action at law, suit in equity, or other judicial proceeding for the enforcement and/or breach of this contract, or any provision thereof" to be broad enough to embrace tort actions because "the causes of action . . . all arise out of [the parties'] contractual relationship."[15]

Here, the nine non-contract claims include unjust enrichment, violations of trade secret, breach of employee contracts, breach of duty, and civil conspiracy claims.

Apex and Related Fund's contractual relationship relates to each claim. Apex's unjust enrichment claim seeks funds that should have been Apex's under the Agreement but were allegedly diverted from Apex by the Defendants. The trade secret claims arise in part from the Defendants' seizure and use of trade secrets protected by Agreement. The Agreement set forth the duties and roles of the Former Employees' relationship with Apex and Related Fund and the Former Employees allegedly violated their employee contracts when they allegedly disrupted the Agreement. And finally, the conspiracy claim centers on conspiring to move the Agreement's business line from Apex to competitors, conducting a "corporate raid," disrupting the relationship established by the Agreement.

---

[14] *Id.* at 444–45.

[15] *Id.* at 445.

To be sure, conduct and data outside of the Agreement are important to this case. But Apex and Related Fund's contractual relationship provides an important context for the claims. That brings the tort claims within the clause's scope.

Apex next argues that while Related Fund may invoke the forum-selection clause, the Former Employees may not invoke its benefit because they are non-signees, and the Agreement expressly prohibits non-signees from enforcing it.

To be sure, those factual statements are correct. But legal the conclusion does not follow. Related Fund is a signee and it is seeking to enforce a right it bargained for. The Former Employees are not seeking this transfer alone. Accordingly, this case is distinct from others where our Court has rejected non-party defendants' invocation of forum-selection clauses without a party to the agreement.[16] As Defendants note, no case law prohibits allowing non-signees to be transferred alongside a signee. And other courts have rightly concluded that "[a] plaintiff cannot simply avoid a forum selection clause by adding non-signatories to the contract in the litigation."[17]

So the Court must determine whether the "closely-related doctrine" permits the Former Employees to transfer alongside Related Fund.

The closely-related doctrine permits non-signatories "to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non-signatories

---

[16] *See Texas Cap. Bank v. Gov't Nat'l Mortg. Ass'n*, 2024 WL 4031491, at *2 (N.D. Tex. Sept. 3, 2024) (Kacsmaryk, J.).

[17] *Marshall v. Maropco, Inc.*, 2016 WL 6820391, at *3 n.6 (S.D. Tex. Nov. 17, 2016).

enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound."[18]

The Fifth Circuit has held that there is not a rigid test for applying this doctrine.[19] It is context specific.[20] But courts consider "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained by the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly."[21]

Defendant Belinkie negotiated the Agreement for Apex and was aware of its forum selection clause. Apex itself acknowledges the Former Employees were aware of the Agreement and its terms. On the other hand, the Former Employees do not have an ownership interest or direct benefits from the Agreement. That said, as explained above, the Agreement forms an important role in the context of Apex's claims and the underlying facts alleged.

Given the context of the claims, the Court concludes that the Former Employees are closely related to the breach claim so as to have foreseen being bound by the forum-selection clause.

Finally, Apex contends that public interest factors weigh against transfer. It argues that the Southern District of New York suffers from greater congestion than our Court, that local interests, namely that the events took place in Texas not New

---

[18] *Franklin Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 439 (5th Cir. 2022) (quoting *Fasano v. Li*, 47 F.4th 91, 103 (2d Cir. 2022)).

[19] *Id*. at 442.

[20] *Id*.

[21] *Id*.

8

York, predominate, and Texas federal courts' competence weigh in favor of keeping the case in Texas.

The Fifth Circuit has noted that "section 1404 was designed to minimize the waste of judicial resources of parallel litigation of a dispute."[22] And "[in] the day-to-day operation the public interest factors will seldom impede enforcement" of a forum-selection clause.[23] Here, both sides insist that judicial economy will be best suited by keeping all claims together. And Apex's arguments have failed to show that this a "most exceptional" case that overwhelms Related Fund's valid forum-selection clause.[24]

Accordingly, the Court concludes that the Agreement's forum-selection clause is binding on the parties and that transfer is justified.

### III. Conclusion

The Court **GRANTS** Defendants' Motion for Transfer Venue and **ORDERS** the case transferred to the United States District Court for the Southern District of New York. (Doc. 17). The Court also **DISMISSES WITHOUT PREJUDICE** Defendants Related Fund, Kraus, Hope, Callen, Chaney, and Belinkie's Motions to Dismiss. (Docs. 46, 48, 49, 52, 57).

**IT IS SO ORDERED** this 23rd day of September, 2025.

---

[22] *See In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014).

[23] *Id.* at 683.

[24] *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63 (2013).

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE